IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Michelle Fiala,** | ) |
|     **Plaintiff,** | ) |
| | )    No. 21 C 4095 |
| v. | ) |
| | )    Judge Ronald A. Guzmán |
| **RMLS Hop Illinois, LLC, et al.,** | ) |
|     **Defendants.** | ) |

### MEMORANDUM OPINION AND ORDER

For the reasons stated below, Plaintiff's amended motion to remand [13] is granted. The Clerk is directed to remand this case to the Circuit Court of Cook County forthwith. Civil case terminated.

### STATEMENT

Plaintiff filed the instant complaint in state court on April 8, 2019, alleging employment-discrimination claims in violation of the Illinois Human Rights Act, among other things. Defendant[1] removed the case to this Court on August 2, 2021. After the Court resolved a question regarding diversity jurisdiction, the parties briefed Plaintiff's amended motion to remand, which is now before the Court.

In her motion to remand, Plaintiff contends that the removal was untimely and asks the Court to remand the case to state court. Generally, a defendant has 30 days from its receipt of the initial complaint to remove a case. 28 U.S.C. § 1446(b)(2)(B). If, however, the initial pleading does not provide a basis for removal, a defendant may remove the case within 30 days after receiving "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* § 1446(b)(3). Moreover, as is relevant here, a case may not be removed based on diversity jurisdiction "more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." *Id.* § 1446(c).

Plaintiff's initial and amended complaints, filed in April and November 2019, respectively, alleged that she resided in Illinois; those pleadings did not provide a basis for removal. Defendant asserts that it relied on those allegations when it was assessing whether it could remove the case. Plaintiff asserts, however, that Defendant had the knowledge to remove the case within 30 days of receiving Plaintiff's answers to interrogatories, which were

---

[1] Although there are two named defendants, RMLS Hop Illinois, LLC ("RMLS") is the only defendant that filed a response to the motion to remand. RMLS's response indicates that its co-defendant, M. Ruben, Inc., is dissolved. Accordingly, the Court refers to Defendant in the singular.

electronically served on February 13, 2020, in which Plaintiff listed California as her then-current residential address. (Pl.'s Answers Interrogs., Pl.'s Ex. C., Dkt. # 13, Answer # 1). Defendant argues that it was not until Plaintiff's July 2, 2021 deposition that it learned that Plaintiff was domiciled in California and had been living there since March 2019.

Prior to analyzing the timeliness of Defendant's removal, the Court first must address Defendant's contention that the motion to remand itself is untimely. Plaintiff had 30 days from the date of removal to file a motion to remand on any basis other than a lack of subject-matter jurisdiction. 28 U.S.C. § 1447(c). The notice of removal was filed on August 2, 2021. Plaintiff's initial motion to remand was filed on September 2, 2021, within 30 days of removal. While Plaintiff was granted leave to supplement her motion to remand, which she did after 30 days from the date of removal had passed, her initial motion to remand was timely filed. Thus, Defendant's request to strike the motion to remand is untimely and is therefore denied.

With respect to the timeliness of Defendant's notice of removal, because over one year passed after the filing of the complaint before Defendant removed the action, Defendant must demonstrate Plaintiff's bad faith prevented Defendant from timely removing the case. It does not appear that the Seventh Circuit has addressed the bad-faith standard relating to removals over one year after an action is filed. *See Henning v. Barranco*, No. 21 C 1657, 2021 WL 5578767, at *3 (N.D. Ill. Nov. 30, 2021) ("To the Court's knowledge, the Seventh Circuit has not precisely defined the conduct that constitutes 'bad faith' in order to excuse a defendant's failure to meet the one-year removal deadline for diversity actions."). "There are, however, other district courts in the Seventh Circuit that have addressed a removing defendant's bad-faith argument." *Id*. "[B]ad faith under § 1446(c)(1) requires a causal link showing that '[p]laintiff has acted in bad faith *in order to prevent* a defendant from removing an action.'" *Id*. (citing *Herron v. Graco*, No. 3:16-CV-00653-NJR-SCW, 2016 WL 7239915 (S.D. Ill. Dec. 15, 2016) (emphasis in *Herron*; citations in *Herron* omitted)).

At the time of her initial complaint, Plaintiff was transient. Plaintiff testified that as of February 2019, she had lost her job in Illinois and was unable to pay her rent. (Pl.'s Dep., Pl.'s Ex. D., Dkt. # 13, at 13.) As a result, on or about March 1, 2019, Plaintiff went to Florida to live with her husband. (*Id*., at 65, 90.) After finding out that her husband was in a nursing home in Florida,[2] on or about March 17, 2019, Plaintiff went to California to stay with a friend. (*Id*.) Plaintiff asserts that as of the date her complaint was filed on April 8, 2019, her "life was in turmoil as the result of losing her job in Chicago and—at that time—she still entertained the idea that she might ultimately remain in Chicago [,where her daughter lived]." (Pl.'s Am. Mot. Remand., Dkt. # 13, ¶ 20.) According to Plaintiff, she "did not obtain employment in California until August of 2019 and did not know that she would be able to receive financial assistance [there] until September[] 2019;" it was "[n]ot until after she got a job and learned that she would receive assistance did it become clear that her domicile had changed." (*Id*. ¶ 15.) Plaintiff concedes that the allegation in the November 2019 first amended complaint that she resided in Illinois was inaccurate. She states that "[i]n the months leading up to the filing of the first amended complaint, the parties had been focused on other, fairly complex issues involving the

---

[2] Plaintiff testified that she was not able to contact her husband prior to her arrival in Florida and had to locate him through a friend.

defendants' corporate structure." (Pl.'s Reply, Dkt. # 32, at 2.) Thus, she asserts, "the first amended complaint was focused on addressing these other issues, and the plaintiff's allegation – that she resided in Illinois – was overlooked in this context." (*Id*.) Plaintiff denies that she "intentionally jockeyed to prevent her case from being removed." (*Id*.)

Defendant notes several inconsistencies in Plaintiff's deposition testimony about the place she intended to remain (i.e., domicile) at the time of the filing of her complaint and amended complaint, but those pleadings refer to Plaintiff's residence, not domicile. In any event, the relevant question is whether Defendant could or should have known as of February 13, 2020 that Plaintiff's domicile may have changed. Plaintiff's interrogatory response that her then-current residential address was in California put Defendant on notice that Plaintiff's domicile may have changed, and Defendant should have inquired further at that time. It had almost two months (one year from the filing of the complaint was April 8, 2020) to seek information about Plaintiff's residence and intent to remain in California. By the time Defendant asked the appropriate questions in Plaintiff's July 2021 deposition, it was too late.

Nor do the facts establish that Plaintiff misrepresented her residence or domicile in order to prevent Defendant from removing the case. As Defendant acknowledges, Plaintiff's residence was in flux for several months as she moved between Illinois, Florida, and Chicago. While her November 2019 amended complaint misstated that she was a resident of Illinois, nothing in the record suggests that Plaintiff intentionally withheld information about her residence or domicile. Plaintiff's counsel's representations about conversations he had with defense counsel support a finding that there was no bad faith. According to Plaintiff's counsel, he and "the defendants' counsel, Hugh O'Donnell, spoke on at least several occasions between the filing of the first amended complaint (November 6, 2019) and the date on which the plaintiff served answers to interrogatories (February 13, 2020) (which answers listed her California address)," and "[i]n those conversations, [Plaintiff's counsel] mentioned that the plaintiff had moved to California, that her physicians and psychological counselors were located in California, and he suggested that the parties consider using videoconferencing to take depositions." (*Id*., at 3.) Then, "long before the plaintiff sat for her deposition on July 2, 2021, [Plaintiff's counsel] commented to O'Donnell that the shift to videoconferencing for depositions after the COVID-19 pandemic was fortuitous in this case – that the attorneys might indeed avoid interstate travel after all." (*Id*.) Plaintiff's counsel filed an affidavit in support of these representations. (Luka Decl., Dkt., # 34.)

Defense counsel filed a responsive affidavit in which he acknowledges that he spoke with Plaintiff's counsel at some point about Plaintiff's deposition, and that during that conversation, Plaintiff's counsel asked defense counsel whether Defendant would require Plaintiff to appear in Cook County for her deposition. (O'Donnell Decl., Dkt. # 35.) Defense counsel is not sure whether the conversation occurred before or after Plaintiff's interrogatory responses were served on February 13, 2020, but he "agree[s] that the conversation . . . [they] are both referring to took place before the pandemic related shutdown of travel and in-person depositions in mid-March 2020." (*Id*. ¶ 3.) Defense counsel avers that he "would have not known the Plaintiff was using a California address until after the Answers were served." (*Id*.) Defense counsel further attests that he never discussed with Plaintiff's counsel Plaintiff's domicile; why she was in or had traveled to California; Plaintiff's state of legal residence; where she was registered to vote; or which state issued her driver's license. (*Id*.)

  While defense counsel's affidavit does not fully support Plaintiff's counsel's recollection regarding the number and details of conversations about Plaintiff's living situation or the location of her doctors, counsels' agreement as to at least the one conversation about Plaintiff's whereabouts, which occurred at the latest in mid-March 2020, indicates that Plaintiff was not attempting in bad faith to hide her residence or domicile in order to prevent Defendant from removing the case.

  "The bad faith exception does not apply when other factors could have motivated the plaintiff's actions." *Herron*, 2016 WL 7239915, at *4. The record suggests that Plaintiff's inaccurate allegation in the first amended complaint that she resided in Illinois was inadvertent, and that Plaintiff's response to Defendant's interrogatory listing her then-current address as California, which was confirmed in at least one conversation between the parties' counsel, should have put Defendant on notice and caused Defendant to investigate further. The Court finds no basis on which to conclude that Plaintiff acted in bad faith in order to prevent Defendant from being able to remove the case. Accordingly, because Defendant's notice of removal was untimely, Plaintiff's motion to remand is granted. The Clerk is directed to remand the case to the Circuit Court of Cook County forthwith.

**Date**: January 18, 2022

                          **Ronald A. Guzmán**
                          **United States District Judge**